At this time, would Attorney Lerman please introduce himself on the record to begin? Good morning. I'm Kevin Lerman. I represent Luis Orlando Perez-Greaux. With the Court's indulgence, I'd like to reserve three minutes for rebuttal. Thank you. You may. May it please the Court. The simplest form of 924C is punishable with a minimum five-year consecutive sentence. When Congress mandated a minimum 30-year sentence, when a gun can fire in fully automatic mode, it included a punishment so severe that conviction must only result if the accused knows that such a gun is a machine gun. But the government here successfully sought a discount on that element and obtained conviction without proving any difference in mental state between the five-year charge and the 30-year charge. Whether this Court affirms a presumption for each element in any criminal charge or simply focuses on the magnitude of punishment, we ask the Court to follow Supreme Court precedent and this Court's precedent and common law tradition to conclude that knowledge is an In O'Brien, for example, the Court referred to the moral culpability of, as the Court said, choosing a machine gun, which involves moral depravity. Or as Castillo stated, the difference between carrying a pistol and a machine gun is great both in degree and kind. This increased punishment here is uniquely severe among statutes and as Staples discussed, virtually any semi-automatic weapon can be converted with slight modification to an automatic one. Should this Court hold that subsection B2 has a scientor element, then it's a question of the ground for reversal. And there perhaps I should have put issue 2 instead of issue 1 because in this case the government doesn't contest that reversal would be warranted under argument 2 because there's no view of the case where it was necessary for the jurors to find the fact of automatic gun possession knowledge. The government doesn't dispute that. In fact, the last thing that the jurors heard before deliberating was a reminder from the government that they didn't have to prove to the jury that Mr. Perez-Groh knew that the firearm that he was storing could fire in automatic mode. Likewise, we argue that the government even conceded that it lacked such evidence in trial court below. We didn't know that they would attempt to argue to this court that they had sufficient evidence of machine gun mens rea and asked this court to affirm on a charge that was never an element of a charge. It was never put before the jury. It would seem to betray principles of fairness and due process to find guilt on an element not submitted to the jury, especially when the jury was relentlessly told that machine gun mens rea didn't have to be proved. But even if the court were to reach, if there's some universe where this court reaches sufficiency, the government's case fails anyway. The case of Torres Perez, the government's best case in its briefing is a night and day difference from this case. We appreciate the government's submission of the expert testimony from firearm examiner Browder in Torres Perez because it shows the stark difference between testimony that described a firearm with an attachment that that the examiner referred to as obvious, which is a term that ends up in this court's opinion, but it's a term that never appears in examiner Browder's testimony in this case. In fact, it's quite the opposite. Fire examiner Browder in this case is questioned about how he knows or what he's describing as a seer. He says the seer is something that appears in the ATF manual and he's questioned about how he knows from looking at the firearm with the modification. He says that the question is, so you know this based on your experience? Yes. And based on your expertise? Yes, sir. That's the answer. There's no discussion that it would be obvious to an ordinary person. And if it weren't, if that weren't abundantly clear, we also see very by police officers with the gun that he's charged with in his waistband, which he then puts inside of a truck and he flees. Then the officer who responds, looks at the firearm and says, I think that's an automatic weapon. So there's proof of him with that firearm. That's a pretty big contrast between the Rogers case, which is approved in Pino Nieves, where someone actually has the automatic firearm underneath the seat of a car, but it's in a bag. It's not something that they're seen holding. So is it your position that Loreano Perez definitively made the mens rea determination? Candidly, Your Honor, I'm not 100% sure. I think it all but made that determination. And I think if we look between Loreano Perez, where the issue is raised, the government has an opportunity to enforce the razor wave rule, which is a doctrine that doesn't have to be followed. So I think that that case has the holding. If we look to Rivera Rivera, and we see that, that case, summarizing the holding in O'Brien, that knowing possession of a machine gun is an element, then it appears that we have the whole thing there. Is it your position that there is a clear holding that would mandate this panel follow that prior precedent? Or do you still think that there's enough room for this court to disagree with those prior cases? I think in terms of the, the law of the circuit, I'm not 100% sure. I think they all but held, they all but held that it's an essential element. And I do think it's, they're significant in a number of ways, which is, which is part of why we submitted the jury instruction from a trial that was two months before this one. Because we see in Justice Kavanaugh's analysis, in the Burwell dissent, we see some normative policy reasons for those elements. And one of those is so that courts, prosecutors, defense attorneys, the public, people who are accused, understand what what the elements are of a crime. Let me ask you, you mentioned Judge Justice Kavanaugh's and Judge Kavanaugh's dissent in the Burwell case. I assume from your briefs, you would like us to adopt that same position, right? That I think is the best position. But that's the second of two dissents. So the other dissent doesn't require a sweeping of a holding. I think, I think the big difference between the two is that Justice Kavanaugh understands Supreme Court precedent and understands the common law doctrine of mens rea. But if we follow Justice Kavanaugh's dissent, that view, you would say that that is consistent with our precedent and Supreme Court case law that would allow us to reach and adopt that same ruling, correct? I would. I think it's 100% consistent. And you really don't have to look at that many cases. Flores Figueroa is a great case to look at because one of the only obstacles that my opponent brings up is this idea of a minimum vicious will that's necessary to find someone guilty of a statute. And so there's this line that the government repeats that he's already guilty twice over. Well, why does it have to be twice over if you're looking for the minimum? We do have Smith versus United States, which held that you can't, you know, accidentally possess a firearm in furtherance. But that's not in, there's not a mens rea for the possession in the statute. There's not a mens rea for the in furtherance. So there's already lots of inferences that are taking place in the statute. So the simplest way to understand what the Supreme Court has said, for example, in Rahafe, that there's a presumption of mens rea as to each of the elements. What do you make of the That's a great question. It's actually not. And I think there's a grammatical mistake in the government's brief. Because when you look at A3, yeah, when you look at A3, for example, when you say is brandished. Is brandished includes a past participle. I'm not a big grammar guy, but you need the actual past participle of a verb to be in passive tense. If I say a firearm is a machine gun, I have a subject, which is the firearm, is, which is a linking verb. And then I have a machine gun, which is, I understand is a subject complement. So it's not, it's not like a police report that the subject was seen. The subject was understood as making a statement that whatever. So it's actually not in the passive voice. And then there's a couple other problems, even if there were some similarities there. First of all, there's mention of one mens rea in 924C, which the court in Dean, when it was looking at that in the sentencing factors context before that was overruled in a lane. So there's that problem there. But getting to the analysis of the fact that one type of mens rea is mentioned there, we have a different type of mens rea. So that's, that's intentional. And we're referring to knowledge here. And that's how most courts have referred to it. My remaining couple of moments, I'd like to address also, this is an unusual case for in furtherance. We have woefully insufficient evidence here. I think the government's line that basically, what you have here is arroz y habichuelas, rice and beans, is their point about you have a gun and some drugs. And so the gun is in furtherance. That sums up the weakness of the nexus element between the firearm and the drugs involved. One of the things that's most significant in cases like Boba y Apagán from 2014, Marin, you actually had expert testimony from law enforcement officers saying things like, Boba y Apagán, drug traffickers use firearms to protect themselves and their merchandise. Here we have nothing of the sort. We have two stored packages. And the government's evidence or argument to the jury was that this was the center of a drug So we asked the court to reverse for the reasons we set forth in briefing. Okay. Thank you. And you've got three minutes left for the government. Mr. Bornstein. At this time, Attorney Bornstein would introduce himself on the record to begin. Good morning, Judge Helpe, and may it please the court, David Bornstein on behalf of the United States. The jury convicted Mr. Perez-Groh based upon legally sufficient evidence of both 924C counts, and the district court did not err or abuse its discretion along the way. I'm going to turn first to the statutory construction point that my brother spent a lot of time on. The district court correctly held that there is no knowledge requirement for a 924C1B to offense, otherwise known as a 924C machine gun offense. That's because for anyone to be guilty of that charge, they already need to commit 924C1A. To be guilty of that, you need to commit A, a drug trafficking offense, and B, knowingly possess a firearm in furtherance of that offense. For the 924C machine gun to apply, the statute says that it applies if the firearm possessed is a machine gun. Now, that text has no knowledge requirement. It doesn't say knowingly possess a machine gun, and courts ordinarily do not add elements to an offense that do not appear on its face. Second, as Judge Thompson noted, the passive voice is being used if the firearm possessed is a machine gun. It's obvious that Congress was thus focusing on the status of the gun. Is it a machine gun? Not on any actor's intent or culpability. Third, the statutory context shows that Congress did not intend a mens rea requirement. If you look at 924C1A2, the brandishing charge, Congress added an explicit mens rea requirement. Brandishing, if you do it, it has a seven-year mandatory minimum, and in 924C4, Congress defined to brandish as to display in order to intimidate. What do you make of Laureano-Perez? So, Laureano-Perez, in that case, a defendant was challenging his 924C, sorry, his 922O conviction. After the government had filed a response brief, the defendant followed a motion to supplement, where he asked the court to consider his 922O arguments as also applying against his 924C machine gun conviction, and the defendant said that's because they both share the same mens rea requirement. The government did not object, and so the court assumed that 924C12B has a knowledge requirement. In any event, Judge Montecalvo, the court eventually affirmed the conviction on the ground that there was sufficient knowledge of the defendant's, there was sufficient proof of the defendant's knowledge. So, whether or not that knowledge was required would be dicta, but it clearly wasn't a holding again because the court made that assumption at the defendant's own invitation. And in any event, I would note that as we set forth in our brief, O'Brien, Rivera-Rivera, and Laureano-Perez, it's all dictum whether or not there is a knowledge requirement. The issue was never squarely presented in those cases. O'Brien was whether or not the 924C machine gun provision was a sentencing enhancement or an element of the offense. Rivera-Rivera was whether 924C1C1 was a sentencing enhancement or an element of the offense. And again, in Laureano-Perez, the court simply assumed knowledge based upon the defendant's invitation, and it would have been dicta nonetheless because there was sufficient knowledge in that case. And the defendant, moreover, waived the argument that First Circuit case law has decided this issue when he told the court below that there is no First Circuit. But returning to why... Did the government waive a legal claim in Laureano-Perez when it didn't object to the interpretation of men's rights? The government simply didn't object, Your Honor, but I don't think that this court... I don't know what simply didn't object means in that context. What does that mean? Well, the government didn't object, but my point would be that doesn't constitute a holding. If two parties were to agree on a legal proposition and this court were to accept it, that doesn't become a holding of the court. Usually what this court does is they say, you know, the parties do not dispute this, so we'll assume it to be true. And indeed, there's a lot of precedent from this court saying that when two parties agree on a legal proposition, the court may accept it, but that doesn't mean that it's a holding of the court because it's not a contested issue. Let me ask you, if we were to decide the Mendraya issue in Mr. Laureano-Perez's claim to Mr. Perez-Gross's favor, that's if the case would have to go back to new trial, right? Yes, so if this court were to hold that, it would have to go back for new trial, and then our legal sufficiency argument would be important because then, you know, we'd have to show that we did indeed provide legally sufficient evidence on the knowledge requirement. I say, you didn't argue on the alternative below. No, Your Honor, but we had no incentive to. So my friend points to a gratuitous comment. I don't know what that means either. So my friend is arguing that because at the post-verdict Rule 29 stage, we did not argue that we had proved knowledge. We waived the idea that we had proved knowledge. But at that stage, the district court had already agreed with the government that there is no knowledge requirement. So when the defendant argued we did not prove knowledge at trial, our response was, well, the court said we don't have to prove knowledge. And saying that we didn't have to prove knowledge, which was correct, didn't mean that we were conceding that we did not prove knowledge. And indeed, if you look at page 752 of the appendix, when the court made that gratuitous comment that we may have conceded the point, we filed a motion to clarify, setting forth that we the appendix instead. But I want to make clear, no court, no appellate court has sided with the defendant's position. He calls it commanded by Supreme Court precedent. But you'll see the only thing he cited is Flores-Figueroa. In Flores-Figueroa, there was an express knowledge requirement. All that the Supreme Court did was use, quote unquote, standard English grammar in order to determine what that knowledge requirement applied to. The defendant does not point to a single case where this court has used the presumption in favor of scienter, or any court has used presumption in favor of scienter, in order to read a mens rea requirement into a statute, where the statute simply further punishes a ready wrongful conduct. There is no such background requirement. Consider the felony murder rule, 18 U.S.C. 1111. If a person commits arson and unknowingly and unintentionally kills someone, they can be held liable for murder. Under my rule, you can unknowingly kill the person. But of course, that's not the case. It follows, you know, there's a strong line of precedent. But this is different to a felony murder. This is somebody's possessing a firearm, but the person knows or doesn't know it's the machine gun. It's a totally different issue than a felony murder. Well, no. Since the defendant is arguing that if there is a large increase in sentence, this court must infer a mens rea requirement. But that's simply not true. And I think felony murder is a perfect example of that. There is, in the end, no appellate court case supporting the defendant. And again, the language of the statute doesn't have a knowledge requirement. It's set in the past using the passive voice, showing that Congress only cared about the status of the machine gun, not on whether there was any individual culpability or intent there. Third, if you look at the structure of the statute, there's an express mens rea requirement in the brandishing provision, but there's not one when it comes to the machine gun provision. This court may infer that that disparate inclusion and exclusion was intentional. And moreover, the presumption in favor of Santer doesn't apply here. It only applies in order to distinguish wrongful from innocent conduct. And there's no way that an individual who is possessing a machine gun, you know, in furtherance of a drug trafficking crime, if it weren't, you know, if you take out the machine gun provision, they're still guilty of 924C. That's the very reasoning this court used when it held that the analogous provision in 924C1B1 doesn't require a mens rea requirement. It's the exact, yes? Can I circle back to something we were talking about earlier, because I'm still thinking about your answer and I'm a little confused by it. So, if we were to disagree with you and say, no, there is a mens rea requirement here, you have a jury instruction below that didn't ask the jury to find an element, would we have to vacate? When Judge Helpe asked you that question, you then started to talk about the sufficiency of the evidence. Well, yes, Your Honor. So, you would have to vacate for a new trial, but based upon the fact that there was sufficient evidence under this court's ruling in Torres-Perez, that the machine gun offense would be one that would be, that could be retried. Right. At a different trial. Yes. Yeah. Okay. I think I misunderstood your previous answer to that question. I'm sorry to break up your flow. No, it's okay, Your Honor. I want to make two points, though. The defendant here is relying on Flores-Figueroa. I'd like to note, if you look at his brief, he doesn't actually develop any argument about Flores-Figueroa in his opening brief. And although he does cite Justice Kavanaugh's concurrences for a completely different point, the only time he asked this court to adopt Justice Kavanaugh's, or sorry, Judge Kavanaugh's concurrence from Burwell, is in his reply brief. There was no developed argument here. He based his entire argument off of the presumption in favor of Sienter, but look at what he cites. It's Reha'ik, which says that the presumption only applies in order to distinguish innocent from wrongful conduct. And again, if you take out the machine gun provision, you're already committing a 924C. And every single circuit court out there has held that there is no presumption in favor of Sienter under such circumstances. The Ninth Circuit did it recently in Woodbury when it came to 924C1B1. Now, I'd like to quickly go through the rest, Your Honor. We believe that there was sufficient evidence under this court's precedent in Torres-Perez. There, the court said that if there is an obvious external modification to a gun, such that anyone who handles it would realize that the gun has been modified, that is sufficient for a jury to infer knowledge. Now, the defendant argues, well, the expert here didn't say that the modification was obvious. He said that simply by looking at the gun, he could tell that the modification was there. And this is it. This is Government Exhibit 30. It's in the 28J. And as you can see, the automatic sear sticks out from the end of the gun. It's a different color. This is better than Torres-Perez, where the same expert witness testified that that sear was flush with the back of the gun. This one sticks out. It's even more obvious than that. And although I know that my friend has argued, well, didn't the expert say that he had to test fire the gun? Here, he said the test firing just confirmed what he already knew. It was a machine gun. He gave the same testimony in Torres-Perez. And the court here could infer, and the jury here could infer, that the defendant had handled the gun. Why? They could do so based upon Judge Agent Rivera's testimony that he saw the defendant with a small black pistol strapped to his hip that was very similar to the Glock pistol that Agent Rivera carried. And indeed, the gun that was recovered was a small black Glock 26. Indeed, if you want to look at Government Exhibit 44, this is a Glock. You can tell it's only slightly bigger than a large cell phone. And it's actually roughly the same size as the holster that was also found separately in the defendant's home. So there was ample opportunity for the jury to infer that the defendant had varying stories about how he received the gun. Each of them shows or at least provides a basis for the jury to infer that he handled it. And since the jury could infer that he handled it, the modification was obvious and external. And there were other things. There was a 30-round magazine from which the jury could infer that he knew it was automatic. He had the gun periodicals in the holster showing he's familiar with guns and used them. There was a consciousness of guilt. He had no testimony that a layperson would notice that the gun sear, that the automatic sear converted into a gun. But the same argument was made in Torres-Perez, and it was rejected by this court. I don't have much time left. I'd like to, with my remaining time, focus on an argument that the defendant made throughout his brief. It's a running argument, which is that Agent Rivera gave false testimony that infected the entire prosecution. And that he had tests and that he had evidence showing that that testimony is false. And let me try to set it out very clearly. He argues first that Agent Rivera gave shifting times and dates for when he conducted the observation of the defendant with the firearm. That's not true. It's June 1, 2018, at 10.20 a.m. That's what he said in the search warrant affidavit at page 82. That's what he said at trial, at appendix 366 and 374 and 375. To be sure, at trial, Agent Rivera had some difficulty remembering the precise date and time. He said it could have been May 30th instead of June 1st, 1 p.m. instead of 10.20 in the morning. However, there was a reasonable explanation for that. The agent said that, you know, 16 months had passed since the observation, and he had lost his case file, and thus wasn't able to review it before coming to court. That was a reasonable explanation that he provided at pages 374 and 375 of the appendix, and he was never cross-examined on that by the defendant. Next, the defendant says that Agent Rivera's location from which he conducted that observation changed, not true. That is because Agent Rivera never specified where he conducted the June 1st observation from. All that he said on page 82 is that he conducted the observation from a place where he had full visibility of the home. On page 375, that is about 100 feet away from the defendant's home. The only thing that changes is the defendant's line of attack and his theory of where the agent must have been and how he could disprove it. But I want to make clear that the defendant doesn't actually have evidence supporting all of his assertions. Now, at the Franks hearing stage, he tried to get a hearing simply based upon his affidavit, saying, I did not carry a gun on the day that the agent said that. Let me ask you one thing. I'm looking at his reconsideration at page 82. And he says, yes. But what he's doing to say he's got a Franks, in front of the Franks hearing, what's in the affidavit, and then the trial testimony. It's not the affidavit for a Franks hearing. You don't wait for trial. Either you get it and you have to have some evidence. You know, perhaps if he had those statements by the time of the Franks hearing, yes, perhaps. But he did not have anything at the time he filed the Franks motion, am I correct, to carry his burden, to create like an issue that there's false testimony? So all that he had was the affidavit that he filed. And I'd like to make a few things clear in response to that, Judge Helfried. First of all, on page 82, the defendant cites pages 365 and 366 of the appendix, as where Agent Rivera said that he conducted the June 1st observation from a wooded DNRA lot. That is false. Read those pages. All that Agent Rivera ever said about that lot is that he conducted part of the May 30th observation from that lot. He did not specify where the June 1st observation took place. And despite having ample opportunity to do so, the defendant never asked him where he conducted that observation from. Instead, he stayed silent and chose to come up on appeal and argue that the agent was perjuring himself. Second, Judge Helfried. So the evidence that the defendant claimed to have at trial that the agent never asked for permission to enter that lot, again, it was predicated on the idea that he did the observation from that lot on June 1st. That's not in the record. That's simply an assertion of the defendant. Second, the three officers he produced. So the agent said, I got permission from a lieutenant. The three lieutenants he produced would have simply said, I was not asked by the officer for permission. But then they also were going to say, and this was part of their proffer, we are not even the people who you would go to to ask for permission. And that, Your Honor, you can find that proffer at pages 573 and 74 of the appendix. You want to sum up 30 seconds? Sure. And the final point I'd want to make is the defendant says that he was prejudiced because the Frank's hearing was vacated and he would have presented all this new evidence. He only got the new evidence on March 11th. The Frank's hearing was going to be on March 7th. So it's wrong to say he would have presented the evidence then. And I simply asked the court, please look at appendix page. And he says that on appendix 19, that he got the evidence after the hearing would have occurred. And also look at appendix page 120 at the footnote. There, he concedes that there are two different logs that the guards kept. One was a visitor's log. One was a log simply recording when the guards started and ended their shifts and any significant things that happened. He submitted the latter log, which did not include anything about visitor entries into it. We asked the court to affirm the conviction here. There is no knowledge requirement for 924C machine guns. And we have not made any arguments suggesting that this court should be the first in the nation to hold that there is such a requirement. Thank you very much. Mr. Lerman, you have three minutes for rebuttal. And you may, at least for a minute, want to address the Frank's issue. Yes, Your Honor. Kevin Lerman. I'm back with you on behalf of Mr. Fettersgrove. The Frank's issue, the government's arguments depend on a motion that the government made showing that it was willing to disregard deadlines and norms to ask for the hearing to be vacated after it had opposed our motion, after the court acknowledged that there was a showing of sufficient to get the Frank's hearing, by the only witness who could contradict Rivera-Velez's testimony that he had somehow surveilled from 100 feet away with binoculars Mr. Fetters' home. What we see there, we see November is our filing of the motion, November of 18. We see the government opposing, November 19. And we see November 28, the court setting the hearing. Then the deadline to reconsider that sunsets. And we see a motion to continue the hearing with the government's acquiescence. So there wasn't any reason that somebody in the hearing would ask for a continuance. The statements that you heard now that weren't briefed about when evidence arrived, what's good for the goose has to be good for the gander here. And if the court is going to accept something beyond any deadline, without any excuse to vacate the hearing, then it should have accepted the evidence that we supplied the court. That actually dovetails with the statements from Rivera-Velez about whether he was in the brush or he wasn't. The objections that the government made now, there's not room for that with the record. When the court dispensed with the three witnesses that we were aiming to present, the court said, wait, all this will do is determine whether he was or wasn't in the brush at the end of the cul-de-sac. And that's what the decision based on, which we see from Pino Nieves, which looks to Villaluna. These cases make clear that all that evidence needed to do was move forward a fact of consequence, which that would have done by showing that Rivera-Velez wasn't actually in the brush where he said he was. We set forth the inconsistencies at page 82. I disagree. And if you look to the warrant affidavit, which is in the appendix, he describes how he gets there and sets up for a surveillance. And then he says, continued surveillance, it'd be pretty misleading to the state court to then say, oh, okay, I wasn't really where I said I did the surveillance from. In sum, we asked the court to reverse all counts as requested in our briefing. And I'd like to just emphasize that none of the district court's errors here were They all shored up the weakest elements of the government's case because prosecutors knew, especially when they dismissed the 922-0 charge before the case, that they lacked proof of machine gun knowledge. And they knew, as you can tell from the transcript, that they lacked in furtherance evidence. Reversals warranted and retrials should be barred to protect the integrity of the legal system. Thank you very much. We're going to take a five-minute recess. Counsel, for the next case, please be here. And what I'm going to ask, I seek